JAMES H. JUSTUS, BERTHA JUSTUS and JUDY ANN JUSTUS
by next friend, etc.,

*v.*

WILLIAM WOOD.

348 S. W. 2d 332, 349 S. W. 2d 793.

(*Knoxville*, September Term (May Session) 1960.)

Opinion filed May 26, 1961.

Rehearing Denied July 26, 1961.

Second Petition to Rehear Denied October 20, 1961.

THOMAS DOSSETT, WILSON, WORLEY & GAMBLE, Kingsport, for plaintiffs in error.

PENN, HUNTER, SMITH & DAVIS, Kingsport, for defendant in error.

SWEPSTON, JUSTICE, dissented.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

The Trial Court sustained the demurrer in each of the three cases wherein suit for damages was sought against William Wood. Each of the plaintiffs has appealed.

The declarations are the same in each case. In so far as pertinent to the decision of the question presented, it avers that while the three plaintiffs had stopped their automobile at a street intersection in obedience to the traffic light it was violently struck from the rear by an automobile owned by defendant, Wood, while being driven by a man named Joe Lane.

Wood had left the automobile parked on the side of a busy highway unattended "without locking the ignition but leaving the keys therein". While in that place and status the car was stolen by this man Lane about 5:00 P.M. Another car had been previously stolen in that locality. At 9:00 P.M. Lane, "driving the car while intoxicated, in a grossly wanton and negligent manner at speeds up to approximately 100 miles per hour, while attempting to elude a Tennessee Highway Patrolman then

pursuing him'', rammed the automobile into the back of the standing car of plaintiffs. It should be said here that the patrolmen pursuing Lane were not aware that he was driving a stolen car. That fact had not at that time been reported to the officers.

The demurrer which the Court sustained averred that the declaration shows that ''the negligence of Joe Lane, the thief, was the efficient, intervening, proximate cause of the plaintiffs' injuries and/or damages''.

Whether the negligence of the owner of the automobile in leaving the car unlocked with the key in the ignition renders the owner of the car liable for injuries resulting from subsequent negligence of the thief is the subject of a quite extensive annotation in 51 A.L.R.2d 633 et seq. The annotations show a very wide difference of opinion by the various Courts of last resort. The majority of these opinions are unquestionably to the effect that the owner of the car is not liable for the damages caused by the intervening negligence of the thief. It should be noted, however, that in many of these cases no statute was involved, in so far as the annotations show.

In the case of *Morris v. Bolling,* 31 Tenn. App. 577, 583, 218 S.W.2d 754, 757, decided by the Eastern Section of the Court of Appeals in 1948, with certiorari denied by this Court in 1949, Judge Howard, in a well prepared opinion for the Court, in a case involving to some extent the question here made this observation:

"We [are] unable to find any cases on the precise question presented here. Courts in other states have decided that where an owner or his agent leaves an automobile unattended with the key in the ignition in violation of a statute or ordinance and a thief drives the

automobile away and negligently injures plaintiff or causes property damage, the defendant's violation of the statute or ordinance has been held to be negligence and constituted 'proximate cause' so as to render defendant liable in damages therefor.'' (Citing cases.)

There was no statute involved, but there was an ordinance in the town where this occurred which forbade the leaving of the key in the ignition. It was the conclusion of the Court in that case that

"whether the defendants' agent under the circumstances might or ought to have foreseen the result of his acts and whether said acts contributed to the damages plaintiff sustained were jury questions and not issues to be determined by the Court as matters of law, they being questions about which men of reasonable minds would differ.'' (Citing decisions of our Court.)

The question was presented to the West Tennessee Court of Appeals in *Teague v. Pritchard,* 38 Tenn.App. 686, 279 S.W.2d 706, 709. In a very scholarly opinion, Judge Carney, the writer of the opinion for the Court, reviewed in considerable detail the question involved and concluded that the owner of the car was not liable. In so concluding he made this statement:

"It has arisen a number of times in other states and the cases all seem to hold that the negligence of the thief in operating a stolen car is the efficient intervening proximate cause of the plaintiff's injury, even though the owner was originally negligent in leaving the car parked in a position where it could easily be stolen.'' (Citing cases.)

It was held that a directed verdict for defendant was proper. That case was decided in 1954. Certiorari was

denied by this Court in July of that year. No statute was involved.

An interesting comment, and one which makes considerable sense, is made in Volume 24, No. 3, Tennessee Law Review, page 397. That comment is:

"It would be generally agreed that the thief's action placed the accident outside of the risk created by the defendant in leaving his car unlocked, if in fact the conduct of the thief was unforeseeable and extraordinary. It would seem in this connection that much depends on whether the injury was sustained during the course of the flight of the thief, or after he had made his getaway. This point was not considered in the principal case, but may well be a determining factor. If the operator of a motor vehicle is negligent in making his vehicle easy to steal, then does not the owner likewise create a risk that the thief will be under fear of apprehension until the theft is consummated; that he will be excited and perhaps even panic-stricken due to the fear of capture; and that his state may well cause him to drive poorly and perhaps even recklessly until he is well away from the scene of the theft?"

It should here be repeated that this accident occurred four hours after Wood's car was stolen by Lane. But it does not appear whether he was in flight or well away from the scene of the theft. This would be a question of evidence should there be a trial of the case. In this connection, however, there is an annotation of the Minnesota case of *Wannebo v. Gates,* 227 Minn. 194, 34 N.W.2d 695; 51 A.L.R.2d 663, wherein the annotator makes this statement:

"The court further pointed out that although the parking of the car under the circumstances was admittedly negligent, and the theft might reasonably have been foreseen, nevertheless, the original actor should not be held liable for the tortious acts of a thief or his successor in possession of the car if such acts took place hours, days, weeks, or months after the flight from the scene of the crime had terminated."

Following the 1954 decision of *Teague v. Pritchard,* supra, our Legislature in 1955 enacted Chapter 329. It is carried in the Code at sec. 59-863, T.C.A. There it reads as follows:

"No person driving or in charge of a motor vehicle shall permit it to stand unattended without first stopping the engine, locking the ignition, and effectively setting the brake thereon and, when standing upon any grade, turning the front wheels to the curb or side of the highway."

A like statute was involved in the Illinois case of *Ney v. Yellow Cab Company,* 2 Ill.2d 74, 117 N.E.2d 74, 77, 51 A.L.R.2d 624. That Court first rhetorically asked the question as to what was the purpose of the Legislature in "prohibiting the leaving of an unattended motor vehicle with the key in the ignition?" The answer it made is obvious that the purpose was not to punish the thief because there are effective statutes for that. The purpose was "rather its interest in public welfare for protection of life, limb and property by the prevention of recognized hazards". It evidently considered one of those hazards to be the driving by the thief upon the highway an automobile recently stolen by him.

■ It is true that the violation of this statute by Wood did not render him liable unless that violation was a contributing cause of the collision which followed. That is, whether this intervening force of the negligent thief was "without or within the range of reasonable anticipation and probability".

■ Considering the nature of the acts and the circumstances surrounding the entire matter, it seems quite clear that reasonable minds might differ as to whether this intervening force of the negligent thief was within the range of reasonable anticipation of Wood. It, therefore, becomes, as this Court views it, a jury question under proper instructions of the Court. In *Fairbanks Morse & Company et al. v. Gambill,* 142 Tenn. 633, 642, 222 S.W. 5, 7, there appears the following:

"The general rule is that what is the proximate cause of an injury is a question for the jury; the court instructing them as to what the law requires to constitute it, and the jury applying the law to the facts. But whether the question is one to be determined by the jury depends on the facts of each case. Thus where the facts of the particular case are controverted, and are of such a character that different minds might reasonably draw different conclusions therefrom, a question of facts is presented properly determinable by the jury."

Under the title "Thieves" with reference to stealing automobiles there appears in 51 A.L.R.2d 662, the following statement:

"* * * if, at the time of the negligence, the criminal act might reasonably have been foreseen, the causal chain is not broken by the intervention of such act. And

the surrounding circumstances, including the nature of the locality in which the negligence occurred, may be sufficient to render an intervening criminal act reasonably foreseeable within the meaning of the latter rule."

The Court is of the opinion that the circumstances surrounding the negligent act of Wood, including the nature of the locality in which the negligence occurred, and the other averments of this declaration are such that different minds might draw different conclusions as to whether the intervening negligent act of the thief following the stealing of the car was a matter that was or should have been within the range of reasonable anticipation of defendant Wood. That is a jury question.

Therefore, the Court is of the opinion with Mr. Justice Swepston dissenting, that the Trial Judge erred in sustaining the demurrer. The judgment of that Court will be reversed and the cause remanded for further appropriate proceedings in accordance with this opinion. All costs of the appeal will be taxed to Wood.

Swepston, Justice (dissenting).

With deference to my Associates, I cannot concur in the majority opinion. In construing a single section of a voluminous revision of our traffic laws applying to public highways, it announces a conclusion that is (1) utterly unrealistic, (2) contrary to the intent of the General Assembly, and (3) contrary to the weight of authority in the several States.

As a result, if you park your motor vehicle unattended on a public road or highway and lock the ignition but fail to remove the key, you can be held liable if a thief steals the vehicle and causes property damage or personal injury or death. Yet if you park on your own driveway,

say two feet away from the street, or on the driveway or parking lot or other private property, you cannot be held responsible for the acts of a thief.

The rule of absolute non-liability in the absence of ordinance or statute is the majority view in this country and was adopted in this State in *Teague v. Pritchard,* 38 Tenn.App. 686, 279 S.W.2d 706 (Opinion filed March 2, 1954, certiorari denied July 23, 1954).

Therefore, unless the enactment of Ch. 329, sec. 62, of the Public Acts of 1955, was intended by the General Assembly to change the rule of the above-cited case, the latter is still the correct rule in this State. Section 62 now appears as T.C.A. sec. 59-863 and is quoted in full in the majority opinion.

If the majority opinion intended to leave the implication that this amended section was designed to change the rule of *Teague v. Pritchard,* supra, such is not justified for several reasons. Among them may be suggested that Chapter 329 was the first revision of the Traffic Safety laws since 1931 and one may be sure the Act was not compiled in the short interval between the summer of 1954, when that opinion was released, and the meeting of the 1955 General Assembly. Also, section 62 is obviously not designed as an anti-theft measure, because section 62 as originally drawn contained the words "removing the key" following the word "ignition" and a comma. Those were stricken by amendment No. 22 (Senate Journal 1955 at page 1056).

Thus is demonstrated conclusively the wisdom of that body—they knew and everybody else knows that a thief, be he professional or a young amateur, needs no key to start a motor vehicle. There are at least three ways it

can be done and it requires only a small piece of wire and about a minute or less to do it the simplest way.

Let us assume arguendo, however, that a statute does contain the express requirement of removal of the key, as was the case in cases cited and strongly relied on in the majority opinion.

One of those cases has been definitely overruled and the other represents the minority view.

The majority opinion cites *Wannebo v. Gates,* 1949, 227 Minn. 194, 34 N.W.2d 695; 51 A.L.R.2d 663, for the distinction attempted between a case where the thief does the damage hours or days after his original flight has ended and on the other hand when it is still taking place.

That distinction was unequivocally discarded and the case overruled a year later by the same Court in *Anderson v. Theisen,* 231 Minn. 369, 43 N.W.2d 272, 273, which case is cited in *Teague v. Pritchard,* supra. There the same ordinance was involved: ''Every person parking a passenger automobile on any public street or alley in the City shall lock the ignition, *remove the key* and take the same with him.''

The Court in holding that the negligence of defendant, if any, was not the proximate cause, said:

'' * * * It is one thing to say that the ordinance is designed to prevent thefts and quite another to say that it is aimed at preventing negligent driving from the scene of the theft. *Sullivan v. Griffin,* 318 Mass. 359, 61 N.E.2d 330. But for the purpose of this case only, assuming that the violation of the ordinance was negligence, we are of the opinion that the negligent driving of the *thieves* was the proximate cause of decedent's

death and that the negligence of the defendant, if any, was too remote in the eyes of the law to be regarded as connected as cause therewith. The weight of authority is to that effect'' (Citing cases from Massachusetts, New York and Louisiana).

The majority opinion has adopted the majority opinion in *Ney v. Yellow Cab Co.*, 2 Ill.2d 74, 117 N.E.2d 74, 81, 51 A.L.R.2d 624, holding the opposite view where the statute reads in substance like the one in the Minnesota case, and like ours, except it does not expressly require the removal of the key.

The brief for appellant and the dissenting opinion show and state that the majority opinion has adopted the minority view over the country. Hershey, J., in dissenting, said:

"The majority concludes that all parts of this statute, except that portion referring to the keys, indicate an intention on the part of the legislature to prevent harm to the public by an inadvertent or negligent movement of a parked vehicle, or through its being driven by a young person devoid of experience, judgment, knowledge, or maturity. It finds that the legislature's purpose in relation to those portions of the statute was not to deter theft. However, the majority then concludes that the portion directing the removal of the keys from the vehicle was to prevent the operation of the vehicle and possible public harm by a thief in flight. The slightest experience renders everyone cognizant of the fact that the removal of automobile ignition keys is only a minor deterrent, if any, to the theft of an automobile and a subsequent flight from detection and pursuit. Consequently, it is only reasonable and logical to

construe the legislature's intention in the passage of this portion of the statute in the same light as is attributed the remainder of the section. * * *''

The opinion further states that it was to prevent a mere negligent or inadvertent starting and ensuing uncontrolled movement.

Therefore, it is apparent that the majority opinion in the instant case, regardless of the presence or absence of a key, has adopted the minority view in this country and contrary to the clear legislative intent, as disclosed particularly by the reference, supra, to the Senate Journal, and has reached a result that simply cannot be justified in the light of every day experience and consistency in administration of law.

I, therefore, respectfully dissent.

### On Petition to Rehear

TomLinson, Justice.

The petition to rehear is quite conservatively presented. Largely, it is a reiteration of that formerly urged upon the Court with additional authorities cited and, in some instances, quoted in part. This response might follow the same pattern and cite additional cases which support its conclusion in this matter. All this will be of no assistance in disposing of this petition to rehear. Suffice it to say, in this respect, this Court's opinion affirmatively recognized it as a fact that the conclusion it had reached was the minority view in so far as the cases in this country now appear in the reports.

This petition to rehear is, in one sense, strongly fortified by the opinion of one of our Associates disagreeing

with the conclusion reached by the other four Justices. This ably presented dissenting opinion, after recognizing that there are opinions of various universally respected State Courts of last resort in this country which take the same view of this case as has this Court's majority opinion, then concludes with the rather unusual, under the circumstances, statement that the majority opinion "has reached a result that simply cannot be justified in the light of every day experience and consistency in administration of law". Consideration of this assertion in the minority opinion will be a full response to the insistences reiterated in the petition to rehear.

What the majority opinion holds is that reasonable minds may differ as to whether the negligence of the automobile thief, whereby these complainants were injured, was an act within the reasonable anticipation of Mr. Wood, the owner of the stolen automobile, at the time he violated the statute and left his automobile parked and unattended with the key in the ignition on a heavily traveled metropolitan street. Hence, the majority concluded, as has a minority of State Courts of last resort in this country, that it became at least a jury question as to whether this intervening act of the thief was within the reasonable anticipation of Mr. Wood at the time he violated the statute and left this car in the condition stated.

As the majority of this Court views the question stated, its opinion does not change the existing law. It simply applies existing law to the changed circumstances with reference to the operation, etc., to automobiles upon the streets and highways of this State. The recognition of these changed conditions and the applicability of the law, as applied to automobiles, with reference to such changes

is, as stated by the text writer, "a tribute to the adaptability and elasticity of the common law". 5 American Jurisprudence, Automobiles, Section 162, page 594.

We no longer have a situation wherein the automobile traffic is comparatively light. To the contrary, for the past several years, the increase in the automobile traffic upon our streets and highways has consistently and continuously much increased. And the speed of these instruments, capable of great harm when improperly used, has likewise so consistently and continuously increased; thereby increasing the danger to the public by improper operation of automobiles in driving them over our streets and highways.

The leaving of the key in the ignition of this automobile while parked upon a heavily traveled street amounted in fact to an open invitation to a thief to enter it and drive away. It made the process of so stealing the automobile without detection as easy as it could possibly have been made.

Is it not, therefore, at least a jury question as to whether the owner of this automobile should have anticipated that a thief, observing the key in the ignition, would step in and drive away without having to commit any act which might arouse the suspicion of others who might be there on the street at the time?

It is common knowledge that a person possessed of the characteristics which would cause him to thus steal an automobile is a person who is irresponsible and totally devoid of regard for the rights and safety of others who might be using the street at the same time that he, the thief, was operating it in heavy traffic. Is it not at least a jury question as to whether such negligent owner of the

automobile should have anticipated that a person so stealing his car would operate it in the reckless and dangerous manner in which this thief was operating this car at the time of the accident in question? Is it not at least a jury question as to whether the owner should anticipate that such a thief would drive the car in the very manner in which this thief was driving this car at the time?

It is stated in the text of 5 American Jurisprudence, Automobiles, Section 164, page 596, that:

"The fact that other happenings causing or contributing toward an injury intervened between the violation of a statute or ordinance and the injury does not necessarily make the result so remote that no action can be maintained. The test is to be found not in the number of intervening events or agents, but in their character and in the natural and probable connection between the wrong done and the injurious consequence."

In the text of 158 A.L.R. at page 1377, quoting from the New York case of *Tierney v. New York Dugan Bros.*, 288 N.Y. 16, 41 N.E.2d 161, 140, A.L.R. 534, there appears this statement.

"Whether the owner or operator of a motor vehicle, in leaving it unattended in a public street, was thereby guilty of negligence such as will render him liable for an injury to a third person caused by a stranger starting the automobile is usually a question of fact for the determination of the jury, in light of all the surrounding facts and circumstances and under proper instructions from the court."

The case of *Ross v. Hartman*, 78 U.S. App.D.C. 217, 139 F.2d 14, as quoted at pages 1383-1384 of 158 A.L.R., goes so far as to hold this:

"But where the driver of a truck left it, in violation of a traffic ordinance, unattended in a public alley, with the ignition unlocked and the key in the switch, outside a garage to be taken inside by the garage attendant for night storage, without notifying anyone thereof, and an unknown person drove the truck away and negligently ran over a person, it was held that the negligence of the truck owner and its causation of the injury was too clear for submission to a jury, the fact that the intermeddler's conduct was itself a proximate cause of the injury, and was probably criminal, being immaterial."

Quotations to like effect might be multiplied in this opinion, but such would serve no useful purpose. Therefore, the minority opinion, we think, is in error in its assertion that the opinion reached by the majority is one which "simply cannot be justified in the light of every day experience". Nor can that minority opinion be correct in its statement that the result reached "simply cannot be justified" with "consistency in administration of law".

As a matter of fact, the majority opinion quotes from the previous opinion of our own Court of Appeals (Eastern Division) of *Morris v. Bolling,* 31 Tenn.App. 577, 583, 218 S.W.2d 754, holding exactly as the majority opinion held in this case. It considered the question with which it was confronted analogous to the situation with which this Court is here confronted. This Court denied application for certiorari in that case. It is true that in the later case of *Teague v. Pritchard* (Western Division), 38 Tenn. App. 686, 279 S.W.2d 706, quoted in the majority opinion, and wherein the violation of a statute was not involved, the Court of Appeals reached a contrary conclusion. In

so doing, it probably overlooked *Morris v. Bolling,* supra, or considered the case different in that it did not have to take into consideration a statute enacted for the safety of the public as in the Bolling case, and in the case at bar.

The Court is satisfied with the conclusion which it reached in this case. Accordingly, it denies the petition to rehear with MR. JUSTICE SWEPTSON dissenting.

On Second Petition to Rehear
349 S. W. 2d 793.

PER CURIAM.

Mr. Justice Burnett, obviously out of his regard for the ability, integrity and sincerity of counsel for the petitioner and due to the importance of the question herein, granted a second petition to rehear in these cases. The questions presented originally have again been thoroughly considered and investigated by the majority of this Court, and after doing so we are in a position to answer this second petition.

It must be kept in mind that these cases came to us on their dismissal by the trial judge wherein he sustained a demurrer to the declarations.

■ All that has been decided by the two previous opinions herein, and that is to be determined by this opinion, is that the question of negligence is one to be decided by the jury, based on their determination from the evidence in the case of the question of foreseeability upon which the proximate cause depended.

■■ To hold, as is the contention of the petitioner, that the injuries herein were due solely to the negligent operation, by an unauthorized person, of this automobile appears to beg the question, because to hold this way assumes that the misappropriation of the car was unfore-

seeable. The statute (sec. 59-863, T.C.A.), itself, is based in part on the likelihood that cars left unattended in violation of this statute will be taken, and implies a degree of foreseeability of that result. It follows that violation of the statute could be found to be an act of negligence which created a foreseeable risk of the car being taken and driven off. If that occurred, and a party was injured by the negligence of such driver, the injury could be held to have been proximately caused by the negligent act of leaving the car unattended.

█ The statute (sec. 59-863, T.C.A.) is a safety device because to do the things that it requires all result in preventing interference with the automobile's stationary condition and mechanical immobility. It is protection to life and property which might otherwise be affected by improper movement of the automobile. The Legislature in enacting this statute provided in the very first sentence of the caption of the Act that the purpose of this Act is "to promote highway safety by regulating the operation of vehicles in Tennessee, * * *." Pub.Acts 1955, c. 329. We must ascribe to the Legislature a desire to effect a purposeful end by the language used, and in so doing, its language should be given its ordinary meaning, the meaning which all of us give to the use of words, without distortion.

The Court of Appeals, Middle Division, in *Beene v. Cook*, 43 Tenn.App. 692, 311 S.W.2d 596, 600, apparently ascribed this purpose to the statute. After quoting the statute (sec. 59-863, T.C.A.) that court says:

"While this last section probably does not apply where the vehicle is parked off a public road or street, nevertheless, it is indicative of what constitutes due

care in parking and leaving a vehicle unattended, especially at a place frequented by the public as in the case here.''

Certiorari was denied by this Court in that case on March 4, 1958.

It is true that the case of *Morris v. Bolling,* 31 Tenn. App. 577, 218 S.W.2d 754, cited in the original opinion and in the opinion on the first petition to rehear, does not have in it either a statute or city ordinance, but the case was cited for the reason that the question there determined was determined exactly as the majority of this Court has determined this question; that the question of foreseeability was a fact question to be determined by the trier of facts.

Foreseeability cases of this kind cannot be summarily rejected. The degree of risk or likelihood that such car would be taken will vary with circumstances, such as the time and place where the car is left, the section of the city, the kind of neighborhood, etc. ''The risk reasonably to be perceived defines the duty to be obeyed, * * *.'' *Palsgraf v. Long Island Railroad Co.,* 248 N.Y. 339, 162 N.E. 99, 100, 59 A.L.R. 1253 (Cardozo, J.). See also 2 Restatement, Torts, sec. 302(b), 303.

After a thorough reconsideration of the questions herein presented we are satisfied that the right result has been reached. The second petition to rehear must accordingly be overruled.