IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 28, 2006 Session

# CLAUDIA HENNEBERRY and husband, SCOTT HENNEBERRY v. JOHN (RANDY) SIMONEAUX and wife, MRS. JOHN (RANDY) SIMONEAUX

**Direct Appeal from the Circuit Court for Williamson County**
**No. 04402      Hon. Russ Heldman, Circuit Judge**

---

**No. M2005-02032-COA-R3-CV - Filed: August 22, 2006**

---

Plaintiffs sued parents of minor child for damages for injuries caused by minor child.  The Trial Court granted summary judgment.  We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Niles S. Immo, Nashville, Tennessee, for Appellants.

William B. Jakes, III., Nashville, Tennessee, for Appellees.

## OPINION

In this action against the parents of a minor child, plaintiff presented two common law theories for the defendants' liability: that the defendants were negligent in the supervision of their child, and that they were negligent in entrusting their child with a bicycle.

The Trial Court granted summary judgment to defendants.

**Background**

On July 4, 2003, John and Marsha Simoneaux and their two daughters planned to participate in an annual neighborhood parade. This parade consists of a fire truck leading the neighborhood children and their parents as they ride their bicycles around the neighborhood. The Simoneaux family assembled at a parking lot near the neighborhood's clubhouse, and there was a small downward grade from the parking lot toward Waterstone Boulevard where the parade was organizing. Two-year-old Natalie Simoneaux rode her training bicycle as it coasted down the incline toward the parade. Mr. Simoneaux followed in an attempt to stop her, but he fell off of his bicycle. After his fall, Mr. Simoneaux looked up to see his daughter on her bicycle, stopped near the parade participants. He assumed that someone had caught her.

Plaintiffs, in their Complaint, averred that Claudia was participating in the parade when she was struck from behind by a training bicycle ridden by Natalie Simoneaux, which resulted in injuries to her lower leg, as well as aggravating a pre-existing health condition.

The Trial Court entered an Order granting summary judgment in favor of the defendants, which stated, "Plaintiffs' claim lacks foreseeability and defendants are entitled to summary judgment as a matter of law." On appeal, plaintiffs' issue is whether the Trial Court properly granted summary judgment in favor of the defendants.

"The standard of review on appeal of a summary judgment determination is *de novo* without any presumption of correctness accorded the trial court's judgment." *Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002).

Both the original Complaint and the Amended Complaint asserted a cause of action based upon the Defendants' allegedly negligent supervision of their daughter. The Tennessee Supreme Court first recognized the common law tort of negligent supervision and control of children in *Bocock v. Rose*, 373 S.W.2d 441, 445 (Tenn. 1963). The Supreme Court described the elements of this tort as follows:

> We find and so hold parents may be held liable for the dangerous habits of their minor children causing injuries and damages to others, when, (1) the parent has opportunity and ability to control the child, and (2) the parent has knowledge, or in the exercise of due care should have knowledge, of the child's habit, propensity or tendency to commit specific wrongful acts, and (3) the specific acts would normally be expected to cause injury to others, and (4) the parent fails to exercise reasonable means of controlling or restraining the child.

*Id.*

In 1981 and 1985, these elements guided the Tennessee General Assembly's

amendment of the parental liability statute.[1] *Lavin v. Jordon*, 16 S.W.3d 362, 368 (Tenn. 2000); *see also* 1981 Tenn. Pub. Acts ch. 161, § 3; 1985 Tenn. Pub. Acts ch. 439, § 2. Following these amendments, § 37-10-103 now provides,

> (a) A parent or guardian shall be liable for the tortious activities of a minor child that cause injuries to persons or property where the parent or guardian knows, or should know, of the child's tendency to commit wrongful acts that can be expected to cause injury to persons or property and where the parent or guardian has an opportunity to control the child but fails to exercise reasonable means to restrain the tortious conduct.

> (b) A parent or guardian shall be presumed to know of a child's tendency to commit wrongful acts, if the child has previously been charged and found responsible for such actions.

Because the General Assembly used language nearly identical to that used in the *Bocock* elements, the Supreme Court later concluded in 2000 that "the common law tort of negligent control and supervision of children, as recognized by [*Bocock*], has been superseded by section 37-10-103 when the damage caused by the child was intentional or malicious." *Lavin*, 16 S.W.3d at 363.

Defendants assert that they had no knowledge of any "tendency to commit wrongful acts" on the part of their daughter; therefore, § 37-10-103 shields them from liability for negligent supervision. Plaintiffs argue that the parental liability statute does not apply because the child's conduct was neither intentional nor malicious. This argument is based upon language in § 37-10-101

---

[1]The parental liability statute consists of §§ 37-10-101 through -103. Section 37-10-101 provides,

> Any municipal corporation, county, town, village, school district or department of this state, or **any person**, or any religious organization, whether incorporated or unincorporated, **shall be entitled to recover damages in an action in assumpsit in an amount not to exceed ten thousand dollars ($10,000) in a court of competent jurisdiction from the parents or guardian of the person of any minor under eighteen (18) years of age, living with the parents or guardian of the person, who maliciously or willfully causes personal injury to such person or destroys property, real, personal or mixed, belonging to such** municipal corporation, county, town, village, school district or department of this state or **persons** or religious organizations. (Emphasis supplied).

Tenn. Code Ann. § 37-10-101 (2005) (emphasis added). Section 37-10-102 limits recoverable damages to "the actual damages in an amount not to exceed ten thousand dollars ($10,000), in addition to taxable court costs." Tenn. Code Ann. § 37-10-102 (2005).

which states, "any person . . . shall be entitled to recover damages . . . from the parents or guardian . . . of any minor . . . who maliciously or willfully causes personal injury to such person." Thus, the Plaintiffs argue that their cause of action is governed by the common law, not the parental liability statute. It is the Defendants' position that the parental liability statute "is not limited to those cases which only involve malicious or willful injury; rather, the statue by its own language applies to all 'tortious activities' of a minor child." This argument is based upon § 37-10-103 which uses the phrase "tortious activities" instead of "malicious or willful." § 37-10-103.

Although § 37-10-103 uses broader language than § 37-10-101, the purpose of § 37-10-103 is to describe the circumstances in which a parent could be liable under § 37-10-101. *Lavin*, 16 S.W.3d at 367-68. Thus, § 37-10-103 does not govern parental liability in general, but only vis a vis § 37-10-101. Section 37-10-101 creates the cause of action, not § 37-10-103; accordingly, if § 37-10-101 does not apply to a case, neither does § 37-10-103. *See Id.* Section 37-10-101 provides a cause of action to individuals "maliciously or willfully" injured by a minor. § 37-10-101. There is no suggestion in this record that the Defendants' daughter acted maliciously or willfully; therefore, the parental liability statute does not apply to these circumstances and the defendants may not rely upon § 37-10-103.

Because the parental liability statute does not cover the facts of this case, the statute leaves the application of common law unaffected. *Monk v. Ramsey*, 443 S.W.2d 653, 655 (Tenn. 1969) ("Rules of common law are not repealed by implication, and if a statute does not include and cover such a case, it leaves the law as it was before its enactment."), cited with approval in *Lavin*, 16 S.W.3d at 368. Although the Supreme Court held that the parental liability statute has a superseding effect on the common law, this effect is narrowly confined. The Supreme Court held that "the common law tort of negligent control and supervision of children, as recognized by [*Bocock*], has been superseded by section 37-10-103 when the damage caused by the child was intentional or malicious." *Lavin,* 16 S.W.3d at 363. According to this language, the statute supersedes the common law tort of negligent control and supervision "as recognized by [*Bocock*]." *Id.* The *Bocock* analysis, however, did not involve non-intentional, non-malicious conduct; rather, it involved an assault and battery committed by the defendant's minor sons. *Bocock v. Rose*, 373 S.W.2d 441, 442 (Tenn. 1963). This explains the Supreme Court's statement that the statute supersedes the common law tort "when the damage caused by the child was intentional or malicious." *Lavin*, 16 S.W.3d at 363. The *Lavin* court's reasoning was that both the *Bocock* decision and the parental liability statute attempted to govern the same circumstances (i.e., injury caused by a minor's intentional, malicious conduct) and there was a conflict between the two (i.e., the statute placed a cap on damages and the common law did not); therefore, the statute prevailed. *Id.* at 368-69. This reasoning does not apply to this case because the parental liability statute is inapplicable to the circumstances here.

Defendants argue that regardless of whether the parental liability statute applies, "there is no authority or basis for parental liability for the acts of a minor child which are neither willful nor malicious." Thus, the issue becomes whether the common law provides a cause of action for negligent parental supervision when the injuries at issue are caused by a minor's non-intentional,

non-malicious conduct.[2] The well settled common law rule is that the parent-child relationship, alone, is insufficient to hold parents liable for the torts of their minor children. *King v. Smythe*, 204 S.W. 296, 297 (Tenn. 1918); *Nichols v. Atnip*, 844 S.W.2d 655, 658 (Tenn. Ct. App. 1992); *Highsaw v. Creech*, 69 S.W.2d 249, 254 (Tenn. Ct. App. 1933). Although this rule prevents vicarious liability, it does not prevent parents from being held liable for their own negligence.

> [I]n order for there to be a cause of action for common law negligence, the following elements must be established: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, cause.

*McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn. 1991).

The concept of legal duty is "an essential element in negligence cases." *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993). "The existence or nonexistence of a duty owed to the plaintiff by the defendant is entirely a question of law for the court." *Id.* "Properly defined, duty is the legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm." *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). This duty, however, "does not extend to the protection of others from the dangerous conduct of third persons unless the defendant 'stands in some special relationship to either the person who is the source of the danger, or to the person who is foreseeably at risk from the danger.'" *Turner v. Jordan*, 957 S.W.2d 815, 818 (Tenn. 1997) (quoting *Bradshaw*, 854 S.W.2d at 871).

The courts of this state have adopted § 315 of the *Restatement (Second) of Torts. Lett v. Collis Foods, Inc.*, 60 S.W.3d 95, 99 (Tenn. Ct. App. 2001); *Newton v. Tinsley*, 970 S.W.2d 490, 492 (Tenn. Ct. App. 1997); *see also Biscan v. Brown*, 160 S.W.3d 462, 479 (Tenn. 2005) (citing § 315); *Bradshaw*, 854 S.W.2d at 871 (citing § 315); *Nichols v. Atnip*, 844 S.W.2d 655, 661 (Tenn. Ct. App. 1992) (citing § 315). Section 315 provides,

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
>
> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>
> (b) a special relation exists between the actor and the other which gives to the other a right to protection.

*Restatement (Second) of Torts* § 315 (1965).

---

[2]As discussed above, *Bocock v. Rose*, 373 S.W.2d 441 (Tenn. 1963) does not supply such a cause of action because the minors in that case committed assault and battery. *Id.* at 442.

The special relations envisioned by *Restatement (Second) of Torts* § 315(a) include "those between parents and their minor children,[3] masters and their servants,[4] and persons having custody of persons with dangerous propensities.[5]" *Nichols,* 844 S.W.2d at 662 (citing *Restatement (Second) of Torts* §§ 316, 317, & 319); *see also Lett*, 60 S.W.3d at 100 (citing §§ 316 through 319). The principles governing the special relationship between a parent and minor child are as follows:

> A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent
>
> (a) knows or has reason to know that he has the ability to control his child, and
>
> (b) knows or should know of the necessity and opportunity for exercising such control.

*Restatement (Second) of Torts* § 316 (1965).[6] The state's adoption of § 315 forms the basis for parental liability for the acts of a minor child which are neither intentional nor malicious.

Plaintiffs, however, cannot successfully assert such a cause of action because there is no dispute that the defendants' child displayed no tendency or propensity to engage in conduct similar to that causing the injury in this case.[7] The Reporter's Notes discussing § 316 emphasize that

---

[3]*Restatement (Second) of Torts* § 316 (1965).

[4]*Restatement (Second) of Torts* § 317 (1965).

[5]*Restatement (Second) of Torts* § 319 (1965).

[6]The comments to § 316 shed further light on the prerequisites of parental liability:

> In order that the parent may be liable under the rule stated in this Section, it is not necessary that the actions of the child which he fails to prevent or control are such as to make the child himself subject to liability. The child may be so young as to be incapable of negligence, but this does not absolve the parent from the performance of his duty to exercise reasonable care to control the child's conduct. Indeed, the very youth of the child is likely to give the parent more effective ability to control its actions and to make it more often necessary to exercise it.

*Restatement (Second) of Torts* § 316 cmt. c (1965).

[7]The Defendants' Statement of Undisputed Facts asserts that "Natalie Simoneaux had never committed any wrongful acts causing injury to person or property and defendants were not aware of any propensity of [their daughter] to do anything which would likely cause injury to person or

"[t]here must, however, be some specific propensity of the child, of which the parent has notice." *Restatement (Second) of Torts* § 316 & reporter's notes (1965). § 37-10-103(a), *Bocock*, and the *Restatement (Second) of Torts* § 316, recognize the rule that parents cannot be held liable for negligent supervision and control unless the child had a specific tendency to engage in conduct similar to that causing the injury at issue. Accordingly, we conclude that under the undisputed facts of this case, the defendants are not liable for negligent supervision and control of their minor child.

The Plaintiffs' Amended Complaint also asserted a common law cause of action for negligent entrustment. The Amended Complaint states, "the Defendants were negligent in entrusting their daughter with a bicycle when they knew, or reasonably should have known, that she was incompetent to ride the bicycle in a safe manner under the existing circumstances . . . ." A claim of negligent entrustment "'requires proof that a chattel was entrusted to one incompetent to use it with knowledge of the incompetence, and that its use was the proximate cause of injury or damage to another.'" *West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 554 (Tenn. 2005) (quoting *Woodson v. Porter Brown Limestone Co.*, 916 S.W.2d 896, 907 (Tenn. 1996)). The Restatement provides the following:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

*Restatement (Second) of Torts* § 390 (1965), *quoted with approval in West*, 172 S.W.3d at 554; *see also Ali v. Fisher*, 145 S.W.3d 557, 562 (Tenn. 2004) (citing § 390); *Woodson*, 916 S.W.2d at 907 (citing § 390).

A negligent entrustment case does not involve entrusting a minor with a toy. The comments to § 390 illustrate situations involving minors, but these illustrations address minors entrusted with firearms and motor vehicles.[8] Similarly, negligent entrustment cases involving minors

---

property." The Plaintiffs' Answer to Defendants' Statement of Undisputed Facts admitted this fact "for purposes of ruling on summary judgment only."

[8]The comments to § 390 provide the following applicable illustrations:

1. A gives a loaded gun to B, a feeble-minded girl of ten, to be carried by her to C. While B is carrying the gun she tampers with the trigger and discharges it, harming C. A is subject to liability to C.

2. A permits B, a boy of ten, who has never previously driven a motor car, to drive his motor car on an errand of B's own. B drives the car carelessly, to the injury of C.

have traditionally involved firearms and motor vehicles, not children's toys.[9] In one Tennessee case involving a minor's toy, we held that the parents of a nine-year-old child were not negligent in giving their child an air rifle. *Highsaw v. Creech*, 69 S.W.2d 249, 250-52 (Tenn. Ct. App. 1933).[10]

What distinguishes the facts at issue from those in the traditional cases is the absence of an unreasonable risk of physical harm.

> A risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm.

> Several factors must be considered in determining whether a risk is an unreasonable one. Those factors include the foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct. *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995) (citations omitted) (citing *Restatement (Second) of Torts* §§ 291 through 293 (1964)).

When this balancing test is applied to facts like those in the traditional cases, an unreasonable risk of harm clearly exists.

The occurrence of an injury is a highly foreseeable probability when a child is entrusted with a firearm, motor vehicle, or some other age-inappropriate chattel, and the possible magnitude of that potential injury is great. In addition, the burden upon a defendant to engage in alternative conduct that would prevent the potential harm is light because there is minimal social value in entrusting such chattels to children. Thus, the foreseeable probability and magnitude of the potential harm generally outweigh the burden upon the defendant to engage in alternative conduct.

---

A is subject to liability to C.

*Restatement (Second) of Torts* § 390 cmt. b, illus. 1-2 (1965).

[9]*Shorter v. McManus*, No. 03A01-9704-CV-00132, 1997 WL 718972 (Tenn. Ct. App. Nov. 13, 1997) ("street legal" motor scooter); *Prater v. Burns*, 525 S.W.2d 846 (Tenn. Ct. App. 1975) (shotgun)*; Barrett v. Reed, 327 S.W.2d 68* (Tenn. Ct. App. 1959) (automobile)*; Smith* v. Salvaggio, 4 Tenn. Civ. App. (Hig.) 727 (1914) (.22 caliber rifle).

[10]A BB shot from this air rife injured the plaintiff's eye while the minor and plaintiff were playing. *Highsaw*, 69 S.W.2d at 250, 254.

In contrast, the facts of this case do not present a clearly unreasonable risk of harm. The occurrence of an injury is far less probable when a child is entrusted with an age-appropriate toy such as a training bicycle, and the possible magnitude of that injury is greatly diminished. Entrusting children with age-appropriate toys has great social value, and is of benefit to the parents. Generally such chattels are designed to be safely entrusted to children. To require parents to further reduce what little risk of harm remains would most likely be futile and would place an unreasonable burden on parents. This is especially true when, as in this case, the child has no history of using the toy inappropriately. Based on the foregoing, the defendants' entrustment of a training bicycle to their two-year-old daughter did not create the unreasonable risk of harm required to successfully assert a cause of action for negligent entrustment.

We affirm the Trial Court's grant of summary judgment, and assess the cost of the appeal to the plaintiffs, Claudia and Scott Henneberry.

_____
HERSCHEL PICKENS FRANKS, P.J.